IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.  1:19-CR-00059 |
| v. | ) | |
| | ) | GOVERNMENT'S |
| MATTHEW STEVEN CARSON, | ) | RESISTANCE TO DEFENDANT'S |
| | ) | MOTION TO SUPPRESS |
| Defendant. | ) | |

COMES NOW, the United States of America, by and through its undersigned counsel, respectfully submits its Resistance to Defendant's Motion to Suppress. (Doc. 30).

**I.     Facts**

On August 8, 2019, at 0748 hours, Officer Boldra with the Council Bluffs Police Department observed a gray Mitsubishi Galant, go through the intersection of 9th Street and 2nd Ave., northbound on South 9th Street in Council Bluffs, Iowa.  Officer Boldra noticed the windows were tinted and later verified it was 23% tint.  Officer Boldra ran the license plate as IPH865 and it did not come back on file.  Officer Boldra shortly thereafter realized he radioed the wrong plate and the actual plate number was IHP865.

Officer Boldra proceeded to 11th Street and 1st Ave but did not see the car continue northbound.  Officer Boldra located the car parked in an alley behind 108 S. 9th Street with the driver still inside the car.  The driver then got out of the car and Officer Boldra asked if he could speak to the driver.  The driver later identified as Carson consented.  Officer Boldra explained that he ran the wrong plate information, but noticed the window tint was dark.  Officer Boldra asked for identification and Carson provided an Iowa identification card that identified him as Matthew Carson.  During this initial conversation, Officer Boldra realized that Carson was a passenger in a vehicle that had eluded him on July 22, 2019.  At this point in the stop, Officer

1

Boldra intended to issue Carson a warning citation for the tint violation and speak with him about the eluding incident that occurred at the Kwik Shop in Council Bluffs, Iowa.

Officer Boldra asked Carson for his permission to pat Carson down, prior to entering his police cruiser.  Carson consented.  Carson told Officer Boldra that he had a screw driver in his back left pocket.   Officer Boldra located a flash light in his back left pocket and removed it.  Officer Boldra patted down his front right pocket and felt a plastic bag, containing a crystalline substance.   Based on Officer Boldra's training and experience he believed this item to be Methamphetamine.  Officer Boldra then patted down Carson's front left pocket and felt a large bulge which he believed was cash.   Officer Boldra then patted down the back right pocket and felt a square shaped item shaped similar to a stun gun.  Officer Boldra requested permission to remove the item which was granted and the item was a digital scale with methamphetamine residue.

At this point, Officer Boldra told Carson he was under arrest for Possession of Drug Paraphernalia and placed Carson in handcuffs.  Officer Boldra searched the front right pocket and located 26.3 grams of Methamphetamine.  The cash was removed from the left front pocket and totaled $4,071 in United States currency.  That pocket also contained a plastic bag containing Amphetamine pills.  The change pocket had 1.6 grams of a white powdery substance.

Officer Boldra advised Carson of his Miranda rights at 0753 hours.   Carson parked the car on private property and did not have permission to park at this location.  Officer Boldra saw a glass pipe with Marijuana residue sitting in the center cup holder in plain view.  Officer Boldra searched the vehicle and located a metal pipe in the driver door pocket, a grinder in the center console, 1.6 grams Marijuana, and a bottle of Amphetamine pills.

The vehicle was registered to John Miller and was impounded and towed by Arrow towing to the impound lot.  An NCIC check of Matthew's driving status revealed he was suspended through the state of Iowa.

## II.      The pat-down was lawful.

The initial traffic stop and detention of Carson was lawful.  "[A] police officer, incident to investigating a lawful traffic stop, may request the driver's license and registration, request that the driver step out of the vehicle, request that the driver wait in the patrol car, conduct computer inquiries to determine the validity of the license and registration, … the driver's criminal history and to determine if the driver has outstanding warrants, and make inquiries as to the motorist's destination and purpose." *see United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006).

Officer Boldra patted Carson down after obtaining his consent.  The government bears the burden to prove voluntary consent by a preponderance of the evidence. *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005); *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). The Fourth Amendment is not violated if the consent is given voluntarily and without coercion. *Id*.  The court should apply a standard of "objective reasonableness" and look at what "the typical reasonable person would have understood from the exchange with the officer." *Id*. (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *United States v. Adams*, 346 F.3d 1165, 1171 (8th Cir. 2003)).

The Court should consider the totality of the circumstances in order to determine whether consent was given voluntarily, and if law enforcement officers reasonably believed the defendant consented voluntarily, the search is lawful and does not violate the Fourth Amendment. *Illinois*

*v. Rodriguez,* 497 U.S. 177, 185-86 (1990); *United States v. Contreras*, 372 F.3d 974, 977 (8th Cir. 2004).

There are several factors for the Court to consider in determining voluntariness, including characteristics of persons giving consent, and the environment in which consent was given. *United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). The personal characteristics considered are: (1) the age of the person; (2) general intelligence and education; (3) whether the person is intoxicated or under the influence of drugs at the time of consent; (4) whether the person consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, based on prior arrests, the person was aware of the protections afforded to suspected criminals by the legal system. *Id.*

In looking at the environmental factors, the court should consider: (1) whether the person who consented was detained and questioned for a long or short time; (2) whether the person was threatened, physically intimidated, or punished by police; (3) whether the person relied on promises or misrepresentations made by the police; (4) whether the person was in custody or under arrest when the consent was given; (5) whether consent was given in a public or a secluded place; or (6) whether the person either objected to the search or stood by silently while the search occurred. *Id.*

To show voluntary consent, "the government must show that a reasonable person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005).   And in doing so pays "particular attention to the characteristics of the person given consent and the and to the

encounter from which the consent arose." *United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998).

Here, the factors weigh in favor of a finding that Carson voluntarily consented to the pat-down and pocket search. Carson is an adult without known mental difficulties, he has previous experience with the legal system, he was not under the influence of drugs at the time, the length of time between when he exited the vehicle and when Officer Boldra asked to pat him down was relatively short, he was not threatened, coerced, or promised anything, he was searched in public, he was cooperative, and he did not object at the time of the pat-down and search. Carson was not under arrest at the time the consent was given.

Carson essentially argues that there is no proof that he gave consent since there is no video evidence. The Court should look at all of the above factors, highlighting this stop is in broad daylight, it is a fairly routine, cooperative, consensual encounter, and a detective is called to the scene to speak with Carson. Additionally, Officer Boldra has previously testified that asking for consent is part of his ordinary practice. "Officer Boldra testified that he routinely asks for consent to conduct a pat-down search before a person enters his police car to protect officer safety." *United States v. Espinoza*, 885 F.3d 516, 523 (8th Cir. 2018).

## III.   Terry pat down

Under *Terry*, a law enforcement officer may conduct a warrantless pat-down search "for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry*, 392 U.S. at 30, 88 S.Ct. 1868). Courts are required to apply an objective test to resolve the question whether "reasonable, articulable suspicion justified a protective search." *Id.* Under this objective test the "officer need

not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S.Ct. 1868. The scope of a pat-down in this circumstance is confined to search for weapons but an officer may still seize other evidence.   Officer Boldra did pat-down Carson for officer safety.  Officer Boldra was going to have Carson sit in the passenger side of his police cruiser.  Officer Boldra believed Carson had been involved in eluding him a couple weeks prior.  Carson told Officer Boldra he had a screw driver and when Officer Boldra removed the item it was a flashlight.  Officer Boldra felt an object he believed to be a stun gun, which would be a weapon.  When Officer Boldra removed the item it was a digital scale, drug paraphernalia.  At this point Officer Boldra placed Carson under arrest.  Officer Boldra asked Carson for consent to the pat-down.  If Carson would have refused, Officer Boldra would have continued the interaction outside the police cruiser without a pat-down.

## IV.    Inevitable Discovery

The doctrine of inevitable discovery applies here because the officers would have found the contraband through other lawful means. "Under the inevitable discovery doctrine, if the government can establish that the evidence at issue, even though unlawfully obtained, would have inevitably been discovered through lawful means, then the deterrence rationale animating the exclusionary rule has so little basis that the evidence should be admitted." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

Officer Boldra would have continued his traffic stop which included running Carson through NCIC which revealed Carson did not have a valid license to drive.  The vehicle did not belong to Carson and Carson did not have permission to park the vehicle at the location in the alley.  The vehicle would have been inventoried and towed as occurred.  Officer Boldra would

have discovered the same items of drug paraphernalia and Amphetamine pills which Carson

would have been arrested for and pat searched incident to arrest.  The items Carson are seeking

suppressed would have been recovered in this scenario.

The search of the vehicle was also justified under the inventory search exception. That

exception to the warrant requirement of the Fourth Amendment is defined as follows:

> The routine practice of securing and inventorying a vehicle's contents is a
>
> response to three distinct needs: the protection of the owner's property while it
>
> remains in police custody, the protection of the police against claims or disputes
>
> over lost or stolen property, and the protection of the police from potential
>
> danger. The central question in evaluating the propriety of an inventory search is
>
> whether, in the totality of the circumstances, the search was reasonable.
>
> Inventory searches that are conducted according to standardized police
>
> procedures, which vitiate concerns of an investigatory motive or excessive
>
> discretion, are reasonable. Standardized police procedures are necessary to
>
> ensure that the search is not merely a ruse for general rummaging in order to
>
> discover incriminating evidence.  *United States v. Frasher*, 632 F.3d 450, 454
>
> (8th Cir. 2011) (cleaned up).

The Council Bluffs Police Department has a clear and established standard inventory policy.

The policy allows for vehicles to be inventoried and towed that present a hazard.

## V.     Statements

There are distinctions between being detained and being in custody. An officer may

detain an individual during a traffic stop in order to complete the investigation that necessitated

the stop. *United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006) (noting the "[officer] had the

authority to check [defendant's] license, and [his] van's registration, ask [defendant] about his destination and purpose, and request that [defendant] sit inside the patrol car"). Such traffic stop detentions are temporary, and thus distinct from being in custody, during which a suspect does not know when he will be able to leave. "The Supreme Court has analogized roadside questioning during a traffic stop to a Terry stop, which allows an officer with reasonable suspicion to detain an individual in order to ask 'a moderate number of questions . . . to try to obtain information confirming or dispelling the officer's suspicions.'" *United States v. Rodriguez–Arreola*, 270 F.3d 611, 617 (8th Cir. 2001) (quoting *Berkemer v McCarthy*, 468 U.S. 420, 439 (1984)).

Prior to Officer Boldra arresting Carson, Miranda advisory is not required.  Officer Boldra read Carson his Miranda advisory at 7:53 a.m.  Detective Adams also read Carson his Miranda advisory at approximately 8:30 a.m. when she met Carson and prior to asking Carson any questions.  The statements Carson made were voluntary and after he was advised of his rights twice.

Wherefore, the United States asks the Court to deny Defendant's motion to suppress.

Respectfully Submitted,

Marc Krickbaum
United States Attorney

By:   */s/Shelly Sudmann*
Shelly Sudmann
Assistant United States Attorney
8 South 6th Street, Suite 348
Council Bluffs, Iowa 51501
Tele:   (712) 256-5009
Fax:    (712) 256-5112
Email:  shelly.sudmann@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2020, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

___U.S. Mail ___ Fax ___Hand Delivery

_X__ECF/Electronic filing ___Other means

UNITED STATES ATTORNEY

By: ___/s/PAC_____
        Paralegal Specialist